**COPY**

Form #42

# COMMONWEALTH OF MASSACHUSETTS

BRISTOL, ss.

[SEAL]

SUPERIOR COURT DEPT. OF THE TRIAL COURT
CIVIL ACTION
No. BRCV2008-00608-A

Harpak, Inc. _____ , Plaintiff (s)

v.

Hyde & Hyde, Inc. _____ , Defendant(s)

(TO PLAINTIFF'S ATTORNEY :
PLEASE INDICATE TYPE OF ACTION INVOLVED :—
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER.)

## SUMMONS

To the Above-Named Defendant: Hyde & Hyde, Inc.

You are hereby summoned and required to serve upon George W. Skogstrom, Jr.
35 Braintree Hill Office Park, Suite 204,
plaintiff's attorney, whose address is Braintree, MA 02184 ;

an answer to the complaint which is herewith served upon you, within (20) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at Taunton either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Hon. Barbara J. Rouse, Adm. Justice of the Superior Court Dept. of the Trial Court, at Taunton, the 13th day of May , in the year of our Lord two thousand and eight.

_Magistrate_

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. If the Commonwealth or an officer of agency thereof is a defendant, the time to be inserted is 60 days.

NOTICE TO DEFENDANT — You need not appear personally in Court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

| CIVIL ACTION COVER SHEET | Trial Court of Massachusetts SUPERIOR COURT DEPARTMENT County: _____ | Docket Number |
|---|---|---|

| PLAINTIFF(S)  Harpak, Inc. | DEFENDANT(S)  Hyde & Hyde, Inc. |
|---|---|
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE<br>George W. Skogstrom, Jr.  781-848-5028<br>35 Braintree Hill Office Park, Ste. 204<br>Braintree, MA 02184<br>Board of Bar Overseers number: 552725 | ATTORNEY (if known) |

## Origin code and track designation

Place on x in one box only:

[ X ] 1. F01 Original Complaint

(X)

[   ] 2. F02 Removal to Sup.Ct. c. 231, s.104 (Before trial) (F)

[   ] 3.  F03 Retransfer to Sup.Ct. C.231,s.102C (X)

[   ] 4. F04 District Court Appeal c.231, s. 97 & 104 (After trial)

[   ] 5. F05 Reactivated after rescript;relief from judgment/ Order (Mass.R.Civ.P. 60)   (X)

[   ] 6. E10 Summary Process Appeal   (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A01 | Breach of Contract | (F ) | (X ) Yes    (   ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A.   Documented medical expenses to date:
   1.  Total hospital expenses ...... $..............
   2.  Total Doctor expenses ...... $..............
   3.  Total chiropractic expenses ...... $..............
   4.  Total physical therapy expenses ...... $..............
   5.  Total other expenses (describe) ...... $..............
   Subtotal  $..............

B.   Documented lost wages and compensation to date ...... $..............
C.   Documented property damages to date ...... $..............
D.   Reasonably anticipated future medical and hospital expenses ...... $..............
E.   Reasonably anticipated lost wages ...... $..............
F.   Other documented items of damages (describe)
   $..............

G.   Brief description of plaintiff's injury, including nature and extent of injury (describe)

$..............

TOTAL: $..............

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

   The Defendant breached its contract with the Plaintiff.     $450,000.00

TOTAL   $..............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____  DATE: 5/7/08

A.O.S.C. 2003

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, ss.                                     SUPERIOR COURT DEPT.
                                                DOCKET NO.:

|                          |   |
|--------------------------|---|
| HARPAK, INC.             | } |
|     Plaintiff,           | } |
|                          | } |
| v.                       | } |
|                          | } |
| HYDE & HYDE, INC.        | } |
|     Defendant.           | } |

## VERIFIED COMPLAINT

### PARTIES

1. The Plaintiff, Harpak, Inc., (hereinafter "Harpak") is a Massachusetts corporation with a principal place of business at 117 Eastman Street, South Easton, Massachusetts 02375.

2. The Defendant, Hyde and Hyde, Inc., (hereinafter "Hyde") is a California corporation with a principal place of business at 300 El Sobrante Road, Corona, California 92879.

### FACTS

3. On November 13, 2007, Harpak provided a written proposal (hereinafter "Contract" – see Exhibit A attached hereto) to Hyde for the manufacturer and sale of a Tray Sealer machine (hereinafter "Equipment") by Harpak to Hyde.

4. On that same date, Hyde accepted the terms of the Contract by signing it and returned the signed Contract to Harpak.

5. The Contract set forth the essential elements of the transaction, including, but not limited to: a description of the tray sealing and filling line and its components; the price; and the payment and delivery terms.

6. The transaction is for the sale of goods, and as a result, it is governed by Article 2 of the Uniform Commercial Code (hereinafter "UCC").

7. After the Contract was executed and as contemplated by the parties, on November 15, 2007, Hyde generated a Purchase Order, as is customary in the industry, for the purpose of generating an invoice and payment of the deposit (see Exhibit B attached hereto).

8. While redundant, the Purchase Order specifically stated, "terms and conditions outlined on proposal."

9. Hyde's issuance of the Purchase Order was a complete ratification of the Contract, and an acknowledgement that the Contract was binding and that the parties had agreed to the terms and conditions of the purchase.

10. Hyde failed to deliver the deposit as was required according to the terms of the Contract.

11. On January 4, 2008, Hyde sent an e-mail to Harpak stating that it decided "to purchase the system from another manufacturer" "based upon numerous factors," and repudiated its Contract with Harpak (see C attached hereto).

12. Hyde's failure and refusal to make the agreed thirty-five (35%) percent down payment, and its January 4, 2008 letter stating that it was not moving forward with the Contract, are both breaches of the Contract.

2

13. Hyde acted in bad faith by delaying the down payment and then attempting to cancel the order.

## FIRST COUNT
## BREACH OF CONTRACT

14. Plaintiff reasserts and realleges the allegations set forth above as if each were separately stated herein.

15. Harpak contracted with Hyde to manufacture and sell it the Equipment.

16. The Contract was specific in nature, and was agreed to by Hyde.

17. Hyde breached the Contract by failing and refusing to pay the thirty-five (35%) percent deposit and repudiating the Contract.

18. Plaintiff has suffered damages due to the breach of the Defendant.

19. Plaintiff is entitled to be in as good a position as full performance of the Contract would have provided and may recover its profit, including reasonable overhead, which it would have made from full performance by Hyde.

20. Plaintiff's lost profit, including reasonable overhead, is in excess of Four Hundred and Fifty Thousand ($450,000.00) Dollars.

## SECOND COUNT
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

21. Plaintiff reasserts and realleges the allegations set forth above as if each were separately stated herein.

22. In every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

23. In every contract there exists an implied covenant of good faith and fair dealing.

3

24. Hyde acted to destroy and injure the right of Harpak to receive the benefit of the Contract and thereby Hyde breached the implied covenant of good faith and fair dealing.

25. Harpak suffered damages as a result of the breach.

26. Harpak's damages exceed Four Hundred and Fifty Thousand ($450,000.00) Dollars.

### THIRD COUNT
### CHAPTER 93A – UNFAIR AND DECEPTIVE ACTS AND PRACTICES

27. Plaintiff reasserts and realleges the allegations set forth above as if each were separately stated herein.

28. Plaintiff believes and therefore alleges that the Defendant has willfully and intentionally engaged in unfair and deceptive trade practices, including, but not limited to delaying the payment of the deposit and attempting to cancel the Contract while simultaneously soliciting and/or negotiating to purchase alternative Equipment.

29. Mr. Hyde's transparent attempt to extort Harpak's capitulation in response to Harpak's initial demand is an unfair and deceptive act (see Exhibit D).

30. Such conduct occurred in commerce.

4

31. The Plaintiff has suffered damages as a result of the unfair and deceptive trade

practices.

## <u>PLAINTIFF DEMANDS TRIAL BY JURY AS TO ALL CLAIMS SO TRIABLE</u>

Respectfully submitted,
Harpak, Inc.,
By its attorneys,


George W. Skogstrom, Jr.
BBO #552725
Schlossberg & Associates, P.C.
35 Braintree Hill Office Park, Suite 204
Braintree, MA 02184
781.848.5028

May 7, 2008

O:\CLIENTS\Harpak-HJ087\Hyde & Hyde-013\Docs\complaint041108.doc

5

$E_X H_1 B_1 T$ A



**Complete Automation and Packaging Solutions**

PRELIMINARY PROPOSAL

*to:*

# Hyde and Hyde Inc.

Mr. Dave McCorkle
300 El Sobrante Road
Corona, CA 92879

*for:*

## Tray Sealer – 7" x 7" Trays
## 90-96/minute

November 13, 2007                    Proposal #3042



PRELIMINARY PROPOSAL

## 1.0   LINE DESCRIPTION:

This machine is designed to denest, convey, and seal 7" x 7" trays, eight up at a rate of up to 90-96 packages per minute. The sealer will seal two rows of four. Three MULTIPOND scales have been added at your request to deposit a variety of salad ingredients.

### 1.1   Rear Denester

The tray transport belt mechanically drives the rear tray denester, which is complete with Venturi systems, pick and place device. The double rear tray denester will deposit two trays per cycle positioned one beside the other on the tray transport belt.

### 1.2   Double Lane Conveyor – 32.4 Feet

The double lane continuous motion infeed conveyor 32.4 feet long and is made of stainless steel with a flighted chain and a common drive. Frame is stainless steel and made for good container handling and quick changeover.

### 1.3   MULTIPOND MP1401-FFC/VA for Product One

Consisting of 14 weighing heads with a weighing range of 320 grams each (target weights up to 1600 grams depending on volume are possible).

The weigher consists of the following main components:

a)   The distribution cone, made from stainless steel, feeds the product to 14 feeding trays. The frequency of the cone can be adjusted easily.

b)   14 pre-feed trays made from stainless steel, conveying capacity of each tray being automatically controlled individually. The frequency of the trays can be adjusted easily.

c)   Vibrators for 14 feeding trays and drive of the central distribution cone are integrated within the weigher. Each vibrator can be accessed and removed individually.

d)   14 pre-feed buckets and 14 weigh buckets, each with a volume of 1.0 l (effective volume of 0.64 l) made from highest quality food-grade, antistatic injection molded plastic, which ensures a clean discharge of the weighing product and prevents adhesion of ice and frost with IQF products. All buckets have a low noise level and can be removed without tools. Bucket flaps are actuated by stepping motors.

e)   14 strain gauge weigh cells engineered to the highest possible standards are self calibrated automatically by means of integrated calibration weights during operation

| Mr. Dave McCorkle | Page: 1 of 13 |
| --- | --- |
| Hyde and Hyde Inc. | Quote #3042 |



PRELIMINARY PROPOSAL

within predetermined time intervals. Consequently cold start-up, temperature or humidity variations do not affect the weigher's precision.

f) The robust main weigher frame is made of stainless steel with integrated control box.

The control box comprises:

- The electronic control system in modular design in European format with a high-speed 16/32-bit microprocessor for :

  - Monitoring and control of all parts of the weigher.
  - Calculation of the best (most accurate) combination of pre-weighed portions to reach the target weight.
  - Automatic control of average amount and the average partial quantity.
  - Automatic calculation of tolerances T1 and T2 according to EC Weights and Measures regulations.
  - Adjustment of lower and upper tolerance limits T1.
  - Adjustment of taring intervals for accurate weighing.
  - Maximum waiting time before a hopper is taken into a deposit.
  - Creating weighing programs – recipes.
  - Selection or memorization of up to 51 weighing programs on internal memory; 204 can be stored on a single memory card.
  - Automatic self-checking and display of faults in clear text.
  - Simplified operation of the weigher through interactive data processing, menu and extensive auxiliary text.
  - Synchronization of the weigher with the packaging machine.
  - Data exchange and control over standardized interface.
  - Adjustable opening speed of the pre-feed buckets and weigh buckets.

- The power supply, is separated from the main supply 400V, 3 phases, 50/60 Hz. Voltage is limited to 60 Volts in the whole weigher.

- Standard interfaces (basic version):
  - Serial interfaces:     2 x RS 232 / 1 x 422 (data exchange, remote control).
  - Inputs:               5x initiator (NAMUR).
  - Outputs:              8 x OC, 24V/0.5A.
                          2 x PWM (control of ext. feeder, distribution cone).
  - External inputs:          4 x optical separation (Synchro, STOP, Ejection,)
  - External outputs:     8 x Semiconductor relays, 60V/1A (Ready, STOP, ERROR).
  - Probes:               3 x Analog or switch output.

- Internal ventilating and cooling system using a built-in fan.



g) Water and dust proof monitor (IP65) incorporated within a swivel stainless steel box fixed at basic frame with:

- TFT Color display (diagonal 12.1") for graphic process visualization.
  Resolution:    800 x 600 pixel.
- Touch screen for input of process parameters and control.
  Technique:    analogue, resistive.
  Surface:       polyester foil.
- Connection for a protocol printer or process documentation.
- Cable between screen and control cabinet:  10 m.

h) 4 discharge chutes made from stainless steel, angle 45°.

i) Intermediate collecting funnel made from stainless steel, angle 45°.

j) Mini air de humidifier. The compact device extracts the humidity from the air within the machine frame and expels it.

The weigher conforms to OIML and has the certificate number R 61/1996-NL-00.01.
It is valid in all the OIML Member States.

## 1.4    MULTIPOND MP1401-FFC/VA for Product Two

Consisting of 14 weighing heads with a weighing range of 320 grams each (target weights up to 1600 grams depending on volume are possible).

The weigher consists of the following main components:

a) The distribution cone, made from stainless steel, feeds the product to 14 feeding trays. The frequency of the cone can be adjusted easily.

b) 14 pre-feed trays made from stainless steel, conveying capacity of each tray being automatically controlled individually.  The frequency of the trays can be adjusted easily.

c) Vibrators for 14 feeding trays and drive of the central distribution cone are integrated within the weigher. Each vibrator can be accessed and removed individually.

d) 14 pre-feed buckets and 14 weigh buckets, each with a volume of 1.0 l (effective volume of 0.64 l) made from highest quality food-grade, antistatic injection molded plastic, which ensures a clean discharge of the weighing product and prevents adhesion of ice and frost with IQF products. All buckets have a low noise level and can be removed without tools. Bucket flaps are actuated by stepping motors.



PRELIMINARY PROPOSAL

e) 14 strain gauge weigh cells engineered to the highest possible standards are self calibrated automatically by means of integrated calibration weights during operation within predetermined time intervals. Consequently cold start-up, temperature or humidity variations do not affect the weigher's precision.

f) The robust main weigher frame is made of stainless steel with integrated control box.

The control box comprises:

- The electronic control system in modular design in European format with a high-speed 16/32-bit microprocessor for :

  - Monitoring and control of all parts of the weigher.
  - Calculation of the best (most accurate) combination of pre-weighed portions to reach the target weight.
  - Automatic control of average amount and the average partial quantity.
  - Automatic calculation of tolerances T1 and T2 according to EC Weights and Measures regulations.
  - Adjustment of lower and upper tolerance limits T1.
  - Adjustment of taring intervals for accurate weighing.
  - Maximum waiting time before a hopper is taken into a deposit.
  - Creating weighing programs – recipes.
  - Selection or memorization of up to 51 weighing programs on internal memory; 204 can be stored on a single memory card.
  - Automatic self-checking and display of faults in clear text.
  - Simplified operation of the weigher through interactive data processing, menu and extensive auxiliary text.
  - Synchronization of the weigher with the packaging machine.
  - Data exchange and control over standardized interface.
  - Adjustable opening speed of the pre-feed buckets and weigh buckets.

- The power supply, is separated from the main supply 400V, 3 phases, 50/60 Hz. Voltage is limited to 60 Volts in the whole weigher.

- Standard interfaces (basic version):
  - Serial interfaces:     2 x RS 232 / 1 x 422 (data exchange, remote control).
  - Inputs:                5x initiator (NAMUR).
  - Outputs:               8 x OC, 24V/0.5A.
                           2 x PWM (control of ext. feeder, distribution cone).
  - External inputs:           4 x optical separation (Synchro, STOP, Ejection,)
  - External outputs:      8 x Semiconductor relays, 60V/1A (Ready, STOP, ERROR).
  - Probes:                3 x Analog or switch output.



- Internal ventilating and cooling system using a built-in fan.

g) Water and dust proof monitor (IP65) incorporated within a swivel stainless steel box fixed at basic frame with:

- TFT Color display (diagonal 12.1") for graphic process visualization.
  Resolution:    800 x 600 pixel.
- Touch screen for input of process parameters and control.
  Technique:    analogue, resistive.
  Surface:    polyester foil.
- Connection for a protocol printer or process documentation.
- Cable between screen and control cabinet:  10 m.

h)  4 discharge chutes made from stainless steel, angle 45°.

i)  Intermediate collecting funnel made from stainless steel, angle 45°.

j)  Mini air de humidifier. The compact device extracts the humidity from the air within the machine frame and expels it.

The weigher conforms to OIML and has the certificate number R 61/1996-NL-00.01.
It is valid in all the OIML Member States.

## 1.5    MULTIPOND MP1401-FFC/VA for Product Three

Consisting of 14 weighing heads with a weighing range of 320 grams each (target weights up to 1600 grams depending on volume are possible).

The weigher consists of the following main components:

a)  The distribution cone, made from stainless steel, feeds the product to 14 feeding trays. The frequency of the cone can be adjusted easily.

b)  14 pre-feed trays made front stainless steel, conveying capacity of each tray being automatically controlled individually.  The frequency of the trays can be adjusted easily.

c)  Vibrators for 14 feeding trays and drive of the central distribution cone are integrated within the weigher. Each vibrator can be accessed and removed individually.

d)  14 pre-feed buckets and 14 weigh buckets, each with a volume of 1.0 l (effective volume of 0.64 l) made from highest quality food-grade, antistatic injection molded plastic, which ensures a clean discharge of the weighing product and prevents

 PRELIMINARY PROPOSAL

adhesion of ice and frost with IQF products. All buckets have a low noise level and can be removed without tools. Bucket flaps are actuated by stepping motors.

e) 14 strain gauge weigh cells engineered to the highest possible standards are self calibrated automatically by means of integrated calibration weights during operation within predetermined time intervals. Consequently cold start-up, temperature or humidity variations do not affect the weigher's precision.

f) The robust main weigher frame is made of stainless steel with integrated control box.

The control box comprises:

- The electronic control system in modular design in European format with a high-speed 16/32-bit microprocessor for :

   - Monitoring and control of all parts of the weigher.
   - Calculation of the best (most accurate) combination of pre-weighed portions to reach the target weight.
   - Automatic control of average amount and the average partial quantity.
   - Automatic calculation of tolerances T1 and T2 according to EC Weights and Measures regulations.
   - Adjustment of lower and upper tolerance limits T1.
   - Adjustment of taring intervals for accurate weighing.
   - Maximum waiting time before a hopper is taken into a deposit.
   - Creating weighing programs – recipes.
   - Selection or memorization of up to 51 weighing programs on internal memory: 204 can be stored on a single memory card.
   - Automatic self-checking and display of faults in clear text.
   - Simplified operation of the weigher through interactive data processing, menu and extensive auxiliary text.
   - Synchronization of the weigher with the packaging machine.
   - Data exchange and control over standardized interface.
   - Adjustable opening speed of the pre-feed buckets and weigh buckets.

- The power supply, is separated from the main supply 400V, 3 phases, 50/60 Hz. Voltage is limited to 60 Volts in the whole weigher.

- Standard interfaces (basic version):
   - Serial interfaces:      2 x RS 232 / 1 x 422 (data exchange, remote control).
   - Inputs:                    5x initiator (NAMUR).
   - Outputs:                  8 x OC, 24V/0.5A.
                                    2 x PWM (control of ext. feeder, distribution cone).
   - External inputs:        4 x optical separation (Synchro, STOP, Ejection.)



PRELIMINARY PROPOSAL

- External outputs:    8 x Semiconductor relays, 60V/1A (Ready, STOP, ERROR).
- Probes:    3 x Analog or switch output.

- Internal ventilating and cooling system using a built-in fan.

g) Water and dust proof monitor (IP65) incorporated within a swivel stainless steel box fixed at basic frame with:

- TFT Color display (diagonal 12.1") for graphic process visualization.
  Resolution:    800 x 600 pixel.
- Touch screen for input of process parameters and control.
  Technique:    analogue, resistive.
  Surface:    polyester foil.
- Connection for a protocol printer or process documentation.
- Cable between screen and control cabinet:  10 m.

h) 4 discharge chutes made from stainless steel, angle 45°.

i) Intermediate collecting funnel made from stainless steel, angle 45°.

j) Mini air de humidifier. The compact device extracts the humidity from the air within the machine frame and expels it.

The weigher conforms to OIML and has the certificate number R 61/1996-NL-00.01.
It is valid in all the OIML Member States.

## 1.6    Sealer Type E590 VG.1 Super

The Sealer type E590 VG.1 Super is a fully automatic double lane tray sealer for sealing plastic, metal, foam or paperboard trays. The E590 VG.1 Super sealer comes equipped with the following:



- Vacuum and gas unit consists of the following:
  a) Fixed speed infeed belt to maintain constant transfer of the two rows of trays onto the servo belt.
  b) Servo belt to collate the two rows of trays before sealing station.
  c) Adjustment of acceleration and deceleration with the servo is made to achieve product control when the product is liquid.
  d) The start, stop and timing of the trays are controlled by photocells at the infeed.
  - Pusher arm is driven by a servo motor:
  a) Arms opening and closing by servo motor.
  b) Forward and backward movement.
  c) Tool lifting by servo motor.



* Adjustable vacuum time.
* Adjustable sealing time.
- Sealing tool assembly with double row consists of the following:
  a) Heating plate with cast in heating element.
  b) Independent sealing head profiles.
  c) Bottom plate with gaskets to compensate for tray edge unevenness.
  d) Film clamping device.
  e) Film cut by punching tool placed in the top tool and with the same shape as the tray.
  f) Bottom tool.
  g) Bottom plate with gaskets to compensate for tray edge variations.
  h) Film feed rollers motor driven and controlled by a balance roller to ensure constant tension on the film take up roller.
  i) Film advance is controlled by a servo drive.
  j) Sensor for monitoring the end of film or breakage.
- Allen Bradley control panel with Proface Interface.
- Centralized lubrication.
- Anodized aluminum and stainless steel frame AISI 304/L.
- Double vacuum and gas valves.

Speed:                                                        up to 13.5 cycles per minute.
                   reduced to 12 cycles due to stop time for scale, also product dependent.
                                     may be less depending on stop time for scale.

Electric power consumption:                       480 volts, 3 phases. 60 amps.

Compressed air (clean & dry):                     ~25 CFM/min. at 6 bar pressure
                                                  With 3/4" line drop.

## 1.7   Channelizer 2 to 1

This device will realign the sealed packages from a double lane to a single lane. A stopping guide holds one lane of packages while the other lane is released.

## 1.8   Ink Jet Printer – Single Head

One ink jet printing system to hot code trays on the side wall, a single head will be mounted on the side of the conveyor as product passes the lot code will be printed. The unit includes one control panel with programmability.



### 1.9    Metal Detector with Multiple Frequencies

The detector incorporates programmable digital electronics, fast action Automatic Balance Control and Automatic Performance Monitoring. Equipment setup is made on the washdown membrane keyboard. Access is restricted by security code, to prevent tampering. Detection signals are indicated on a 30-segment green/red LED bar graph indicator. The microprocessor includes a comprehensive set of adjustable timers. The new Faraday screening process allows for increased immunity to interferences from high frequency signals from surrounding areas. Includes installation.

Length: 42"
Infeed Height: 38" ± 2"
Outfeed Height: 38" ± 2"
Belt Type: 10" Intralox
Belt Speed: 100 FPM
Roller/Pulleys: Sprocket
Electrical Enclosure: NEMA 4X
Motor Enclosure: Washdown
Frequency: Three Frequencies

### 2.0    PRICING:

| | | |
|---|---|---:|
| 1.1 | Rear Denester | $  20,000.00 |
| 1.2 | Double Lane Conveyor 32.4 feet | $  63,000.00 |
| 1.3 | MULTIPOND MP1401-FFC/VA for Product One* | $ 249,000.00 |
| 1.4 | MULTIPOND MP1401-FFC/VA for Product Two* | $ 249,000.00 |
| 1.5 | MULTIPOND MP1401-FFC/VA for Product Three* | $ 249,000.00 |
| 1.6 | E590 VG.1 Super | $ 399,000.00 |
| | Photocell Registration | $  8,000.00 |
| | Vacuum Transducer | $  4,900.00 |
| | Reciprocating Tool Cart | $  14,000.00 |
| | Vibration (3 @ $12,000.00) | $  36,000.00 |
| | Intermittent Motion | $  10,000.00 |
| | Confirmation Station | $  9,300.00 |
| | Busch 630 Pump with 1000 Booster | $  39,000.00 |
| 1.7 | Channelizer 2 to 1 | $  18,000.00 |
| 1.8 | Ink Jet Printer – Single Head | $  23,000.00 |
| 1.9 | Metal Detector | $  40,000.00 |

Items 1.3 – 1.5 Scales Include:
- Pre-weigher
- Feed Trays with Steeper Angle
- Feed Trays with Enclosed Front Wall



PRELIMINARY PROPOSAL

- Support for Feed Tray
- Pre-feed Bucket
- Weighing Bucket
- Specially Angled Chutes and Funnel
- Flange on Outlet of Funnel
- Product Guide Plate At Funnel
- Dimpled Steel Surface – 1401
- Catch/Drip Pan Underneath Load Cell Cage
- Cylindrical Funnel with Rubber Curtain
- Cross Head Feeder "BE-EXT 1000/175-A-01"
- External Control – 1 x Cross Head Feeder
- BE 202/1000 – Tray Dimpled Steel Surface
- Conveyor Control – Board 323-01
- Optical Probe + Mounting Parts – BE Inlet
- Board 327-03 – I/O Board
- Common Frame for BE and Weigher
- Timing Hopper Device
- Distribution System Two Lane/Four Rows/Eight Pockets
  Consisting of:
    - 1 cardanic suspension frame A:B
    - 1 Swiveling funnels A :B:C:D - funnel removable for cleaning
    - 1 Reject position E, includes reject hopper
    - 1 Format bucket 8-fold (simultaneously actuated)
    - 1 Format funnel 8-fold with rise-and-fall function
    - 1 Stainless steel frame on casters, including brackets for fastening
      at packaging machine pads and elevating screws for leveling.
    - 1 Protective housing made of MAKROLON, with electro-mechanical
      interlocks
    - 1 Terminal strips, pneumatic valves in stainless steel box
    - 1 Control from weigher incl. board 327
    - 1 Synchronization and test with weigher
    - 1 Air supplying device with start valve and pressure control sensor
    - 1 All pneumatic cylinders in stainless steel
    - 1 Documentation
- Conversion Kit: UL + 3x 460/480 V for USA
- Mounting Bracket for Monitor
Data Capture and Communication Options:
- Remote Control Software "multi.exe"
- Adapter RS232 – Ethernet
- Cable, Serial Communication, Weigher to PC, 10m

*Non-OEM Equipment.

Case 1:08-cv-11013-RBC    Document 1-3    Filed 06/16/08    Page 19 of 31



PRELIMINARY PROPOSAL

## 3.0   TERMS & CONDITIONS:

### 3.1   Terms

- 35% due with Purchase Order.
- 55% due upon notice of ready for shipment, before shipment.
- 10% due thirty (30) days after delivery.
- All prices quoted are exclusive of state and local sales and use taxes.
- All testing materials and freight to be the responsibility of Hyde and Hyde, Inc.

### 3.2   Delivery

Delivery will be F.O.B. port of entry.   *Non-OEM equipment F.O.B. German factory.  Lead-time will vary depending on when the order is placed.  Estimated shipment date from Italian factory is twenty-two to twenty-four (22-24) weeks from receipt of purchase order, deposit, trays. lidstock and sample product. Shipment by sea in seaworthy containers.

### 3.3   Installation and Training

A Harpak technician will provide installation and training for a period of ten days. *Non-OEM equipment installation to be billed at our applicable service rates.  A rate sheet is attached.  Hyde and Hyde Inc. will be responsible for preparing the site for the installation of equipment-electrical & air.  Any additional costs that are incurred because the site is not prepared will be the responsibility of Hyde and Hyde Inc.  Harpak will notify you in writing what is required to prepare the site for installation.

### 3.4   Warranty

Harpak will warranty for defective parts or workmanship for a period of six months from the date of installation at your plant.  This warranty has the following conditions:

- The damaged mechanical parts, which can be removed from the machine, will be repaired or replaced and the cost for disassembling, packing and transport will be at the expense of Hyde and Hyde Inc.  Damaged parts need to be returned for warranty credit.
- The replacement of damaged parts with new parts does not change the guaranty period.
- For the repairs that must be made at buyer's site, Hyde and Hyde Inc. is obligated to pay the traveling expenses and a daily amount to our personnel

Hyde and Hyde Inc.                                                                      Quote #3042

 **HARPAK**

PRELIMINARY PROPOSAL

in conformity with the tariffs in force. Hyde and Hyde Inc. must also put at the disposition of our personnel all the material required for the work.

- Improper use of equipment or the use of corrosive materials shall not be considered a defect in workmanship or material.
- Harpak does not have any responsibility if the machines are installed in an area, which differs from contractual ones, or if machines are modified without our consent.
- There is no responsibility to Harpak for damages caused by improper assembly, unskilled personnel, insufficient lubrication, etc.

### 3.5    Validity

The aforementioned prices, terms, and conditions are valid for thirty (30) days or until December 13, 2007.

Authorized Signature_____Date_____
Harpak, Inc.

Authorized Signature_____Date 11 | 13 | 07
Hyde and Hyde Inc.

---

 **HARPAK** ℍℰ
Complete Automation and Packaging Solutions

PRELIMINARY PROPOSAL

## TECHNICIAN RATES

S 110.00 .................................... Per Hour, 8 Hour Day.

S 155.00 .................................... Per Hour, over 8 Hours in a Day,
and Saturday.

S  70.00 .................................... Per Hour Travel Time.

S 190.00 .................................... Per Hour, Holidays and Sundays.

Air, Hotel, Car Rental, Expenses and Meals billed at cost.

---

Mr. Dave McCorkle                                      Page: 13 of 13
Hyde and Hyde Inc.                                     Quote #3042

*EXHIBIT B*

PURCHASE ORDER



NO: 54708
DATE: 11/15/07

VENDOR # 4984
HARPAK INC
117 EASTMAN STREET
SOUTH EASTON, MA 02375

SHIP TO: 110
HYDE & HYDE INC
500 EL SOBRANTE ROAD
CORONA, CA 92879

FAX: (508)-238-8855

PAGE  1

| VENDOR CONTACT | REF# | F.O.B. | | SHIP VIA: | | TERMS: |
|---|---|---|---|---|---|---|
| JIM RYAN | | VENDOR WHSE | | DELIVERED | | NET 30 DAYS |
| ID; QTY | SCH.DT | PART/DESC | | PREV WHS; | UNIT PC | UM; | EXT PRI! |

| ID | QTY | SCH.DT | PART/DESC | UNIT PC | EXT PRI! |
|---|---|---|---|---|---|
| 1 | 1 | 04/03/08 | gl#14200003<br>EQUIPMENT - CORONA | 500920.00 | 500920. |

for the purchase of 1 Mondini
machine. terms and conditions
outlined on proposal. payment plan
as follows: 35% down upon purchase
55% due up noticification of ready
to ship 10% due 30 days after
delivery. REVISED - CHANGED LINE
PRICING...AVM 11/19/07

| 2 | 1 | 04/03/08 | gl#14200003<br>EQUIPMENT - CORONA | 787160.00 | 787160. |

55% down upon notification of ready
date

| 3 | 1 | 04/03/08 | gl#14200003<br>EQUIPMENT - CORONA | 143120.00 | 143120. |

10% due 30 days after delivery

HYDE & HYDE, INC. PURCHASE ORDER SPECIAL INSTRUCTIONS:

A delivery appointment, 48 hours in advance of the date that you wish to
deliver any good or service against this (& all) Hyde&Hyde Purchase Order
is required.  To schedule your appointment, please call the Receiving
Department at (951)817-2300 Extension #212 only between 7am to 2:30pm PST.
   Please note that the PO scheduled date is an in-house receipt date and
not a ship date.
   A minimum usable shelf life of 90% for any perishable product without
exception is required.  Proof of such shelf life shall include the date
of manufacture of the product, the date of shipment of the product and

EXHIBIT C

**From:** dmccorkle@hydeandhyde.com [mailto:dmccorkle@hydeandhyde.com]
**Sent:** Friday, January 04, 2008 6:21 PM
**To:** fwh@multipondamerica.com; Jim Ryan
**Subject:** Cancellation of Order

Jim and Fred

We want to thank you for all you work and the information you provided us through this project however based upon numerous factors we have decided to purchase the system from another manufacturer.  Some of those factors were the initial cost of the system versus the tray per minute that can be achieved with hand loading a single item, the space needed for the system and the lead time of the system.

Thanks again.

David McCorkle
VP Operations
(951) 817-2317

2/20/2008

EXHIBIT D

## George Skogstrom

| | |
|---|---|
| **From:** | thyde@hydeandhyde.com |
| **Sent:** | Tuesday, January 15, 2008 5:36 PM |
| **To:** | dmccorkle@hydeandhyde.com; George Skogstrom; ranich@hydeandhyde.com |
| **Cc:** | jimryan@HARPAK.COM; Lindaharlfinger@HARPAK.COM |
| **Subject:** | RE: Harpak Tray Sealing and Filling Line |

If your client pursues this, then it will have repercussions throughout the fresh-cut
produce industry which won't be in their best interest, in my
opinion.


Thank you,

Timothy A. Hyde
President
Hyde & Hyde, Inc.

Phone: (951) 817-2301
Fax:     (951) 817-2302
Email:  thyde@hydeandhyde.com


-----Original Message-----
From: Dave McCorkle
Sent: Tuesday, January 15, 2008 2:34 PM
To: George Skogstrom; Roger Anich
Cc: Jim Ryan; Linda Harlfinger
Subject: RE: Harpak Tray Sealing and Filling Line

Roger

Please read attached and send to our attorney for review.

-----Original Message-----
From: George Skogstrom [mailto:GSkogstrom@sabusinesslaw.com]
Sent: Tuesday, January 15, 2008 2:30 PM
To: Dave McCorkle
Cc: Jim Ryan; Linda Harlfinger
Subject: Harpak Tray Sealing and Filling Line


Dear Mr. McCorkle:

Attached is my letter concerning Harpak.   Please respond accordingly.


George W. Skogstrom, Jr., Esq.

Schlossberg & Associates, P.C.

35 Braintree Hill Office Park, Suite 204

Braintree, MA 02184

Telephone: 781-848-5028

Facsimile: 781-848-5096

gskogstrom@sabusinesslaw.com

www.sabusinesslaw.com


*****************************************
This e-mail, including any attachments hereto, is intended only for use by the addressees named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this email, and any attachments hereto, is strictly prohibited. If you receive this email in error please notify me at (781) 848-5028 or by return e-mail and permanently delete the original and all copies of this email and any printout hereof. To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding U.S. tax penalties. Thank you.
*****************************************

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, ss.                                SUPERIOR COURT DEPT.
                                            DOCKET NO.:

|  |  |
|---|---|
| HARPAK, INC.<br>    Plaintiff, | } |
| v. | } |
| HYDE & HYDE, INC.<br>    Defendant. | } |

## VERIFICATION OF COMPLAINT

I, Linda Harlfinger, President of Harpak, Inc., hereby verify, under oath, that the averments made in the Complaint filed in the referenced action are true and accurate based upon my own personal knowledge and a review of the business records maintained by Harpak, Inc. in the normal conduct of its business and that the documents attached to the Verified Complaint are true and accurate copies of business records maintained in the ordinary course of business by the plaintiff, Harpak, Inc.

Signed under the pains and penalties of perjury this 22 day of April, 2008.

Linda Harlfinger, President

O: CLIENTS Harpak-HJ087 Hyde & Hyde-013 Docs\verification041108.doc

## Commonwealth of Massachusetts
### County of Bristol
### The Superior Court

CIVIL DOCKET # BRCV2008-00608-A
Courtroom CtRm 1 (Fall River)

RE:    Harpak, Inc. v Hyde & Hyde, Inc.
TO:

George W Skogstrom Jr, Esquire
Schlossberg & Associates PC
35 Braintree Hill Office Park
Suite 303
Braintree, MA 02184-0699

### SCHEDULING ORDER FOR F TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated, and case shall be resolved and judgment shall issue **02/28/2010**.

| STAGES OF LITIGATION | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | 08/07/2008 | 08/07/2008 | |
| Response to the complaint filed (also see MRCP 12) | | 09/06/2008 | |
| All motions under MRCP 12, 19, and 20 | 09/06/2008 | 10/06/2008 | 11/05/2008 |
| All motions under MRCP 15 | 09/06/2008 | 10/06/2008 | 11/05/2008 |
| All discovery requests and depositions served and non-expert depositions completed | 03/05/2009 | | |
| All motions under MRCP 56 | 04/04/2009 | 05/04/2009 | |
| Final pre-trial conference held and/or firm trial date set | | | 09/01/2009 |
| Case shall be resolved and judgment shall issue by **02/28/2010** | | | 02/28/2010 |

- The final pre-trial deadline is <u>not the scheduled date of the conference</u>.
- You will be notified of that date at a later time.
- Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

Dated: 05/09/2008

Marc J. Santos, Esq.
Clerk of the Court

Telephone: (508) 672-4464

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130 --Check website as to status of case: http://ma-trialcourts.org/tcic 646915 inidoc01 ponlem

# COMMONWEALTH OF MASSACHUSETTS

BRISTOL, ss

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

HARPAK, INC.,

　　　　Plaintiff,

　　v.

HYDE & HYDE, INC.,

　　　　Defendant.

CIVIL ACTION NO. 08-00608-A

## HYDE & HYDE, INC.'S ANSWER

Hyde & Hyde, Inc. ("Hyde") answers the allegations in the Verified Complaint as follows:

### Parties

1.　　Hyde lacks sufficient information or knowledge to admit or deny the allegations in Paragraph 1.

2.　　Hyde admits the allegations in Paragraph 2.

### Facts

3.　　Hyde admits it received a Preliminary Proposal from Harpak, but otherwise denies the allegations in Paragraph 3.

4.　　Hyde admits that it signed the Preliminary Proposal and returned it to Harpak, but otherwise denies the allegations of Paragraph 4.

5.　　Hyde admits that the Preliminary Proposal included a description of the product, the price, and the payment and delivery terms, but otherwise denies the allegations in Paragraph 5.

6.      Hyde states that Paragraph 6 states a legal conclusion to which no response is required.

7.      Hyde admits that it generated a Purchase Order, but otherwise denies the remaining allegations in Paragraph 7.

8.      Hyde admits that Paragraph 8 correctly quotes Exhibit B, but otherwise denies the remaining allegations in Paragraph 8.

9.      Hyde denies the allegations in Paragraph 9.

10.     Hyde admits that it did not deliver a deposit, but otherwise denies the remaining allegations in Paragraph 10.

11.     Hyde admits it sent the e-mail reflected in Exhibit C, but otherwise denies the remaining allegations in Paragraph 11.

12.     Hyde denies the allegations in Paragraph 12.

13.     Hyde denies the allegations in Paragraph 13.

## First Count

14.     Hyde repeats and reasserts its previous responses.

15.     Hyde denies the allegations in Paragraph 15.

16.     Hyde denies the allegations in Paragraph 16.

17.     Hyde denies the allegations in Paragraph 17.

18.     Hyde denies the allegations in Paragraph 18.

19.     Hyde denies the allegations in Paragraph 19.

20.     Hyde denies the allegations in Paragraph 20.

## Second Count

21.     Hyde repeats and reasserts their previous responses as if fully stated herein.

2

22.    Hyde states that Paragraph 22 states a legal conclusion to which no response is required.

23.    Hyde states that Paragraph 23 states a legal conclusion to which no response is required.

24.    Hyde denies the allegations in Paragraph 24.

25.    Hyde denies the allegations in Paragraph 25.

26.    Hyde denies the allegations in Paragraph 26.

### Third Count

27.    Hyde repeats and reasserts their previous responses as if fully stated herein.

28.    Hyde denies the allegations in Paragraph 28.

29.    Hyde denies the allegations in Paragraph 29.

30.    Hyde states that Paragraph 30 states a legal conclusion to which no response is required.

31.    Hyde denies the allegations in Paragraph 31.

### Affirmative Defenses

(1)    The Court lacks personal jurisdiction over Hyde & Hyde.

(2)    The Complaint fails to state a claim upon which relief can be granted.

(3)    The plaintiff's claims are barred by the doctrine impossibility and impracticality.

(4)    The plaintiff's claims are barred for lack of consideration.

(5)    The plaintiff's claims are barred as a result of failure of consideration.

(6)    The plaintiff's claims are barred because the alleged agreement was canceled or rescinded by the parties.

(7)    The plaintiff's claims are barred under Rule 12(b)(5) to the extent that there was insufficient service of process.

3

Respectfully submitted,

HYDE & HYDE, INC.,

By its attorneys,

Daniel P. Dain (BBO# 632411)
Daniel J. Pasquarello (BBO#647379)
BRENNAN, DAIN, LE RAY, WIEST, TORPY & GARNER, P.C.
129 South Street, 3d floor
Boston, MA 02111
Tel: (617) 542-4800
Fax: (617) 542-4808

DATED: June 6, 2008

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true copy of the above document to be served by first class mail upon counsel for the plaintiff, George W. Skogstrom, Jr., this 6th day of June 2008.

Daniel J. Pasquarello

4